[No. B043643. Second Dist., Div. One. July 3, 1990.]

NICHOLE FORTMAN, a Minor, etc., Plaintiff and Appellant, v. SAFECO INSURANCE COMPANY OF AMERICA, Defendant and Respondent.

[Opinion certified for partial publication.*]

---

* Pursuant to California Rules of Court, rules 976.1 and 976(b), this opinion is certified for publication with the exception of part II.

COUNSEL

Hurley, Grassini & Wrinkle and Roland Wrinkle for Plaintiff and Appellant.

Demler, Armstrong & Rowland and Robert W. Armstrong for Defendant and Repondent.

OPINION

**ORTEGA, J.**—This equitable subrogation action arose from an underlying personal injury lawsuit brought by Nichole Fortman (Fortman) against Austin Hardware and Supply, Inc. (Austin), the component part manufacturer of a jeep door handle and lock assembly, and others. Safeco Insurance Company of America (Safeco), Austin's primary insurer, repeatedly refused to settle before trial within its $300,000 primary policy limits. When Austin settled during trial, Safeco contributed its policy limits. U.S. Fire Insurance

Company and Industrial Indemnity Company (U.S. Fire), Austin's excess insurer, contributed $1,125,000 of its $2 million excess policy limits and assigned to Fortman its equitable subrogation claim against Safeco. The jury found Austin zero percent responsible for Fortman's injuries.

Fortman then filed this action. The trial court granted summary judgment for Safeco and dismissed the case. Fortman appealed. We must decide whether the absence of a judgment in excess of Austin's primary policy limits, and the underlying jury determination absolving Austin of responsibility for Fortman's injuries, preclude Fortman's equitable subrogation action. We find they do not and reverse the summary judgment.

## FACTS

The relevant facts are undisputed. Three-year-old Nichole Fortman was permanently injured when thrown from a moving jeep driven by her mother. The jeep was covered by a molded shell with a rear-hinged door secured by a nonrecessed lock and handle. Before trial of her underlying lawsuit, Fortman settled with all defendants except the shell's manufacturer and Austin, which supplied the lock and handle. Safeco was Austin's primary insurer, and U.S. Fire provided Austin's excess insurance coverage.

Before and during Fortman's personal injury trial, Safeco repeatedly refused settlement offers within its policy limits, alone and in combination with other defendants and insurers, to dismiss Austin as a defendant. Before trial, Safeco rejected a $125,000 settlement offer and offered $7,500. During trial, Safeco increased its settlement offer to $25,000. Despite express requests, Safeco did not convey these offers to Austin or U.S. Fire or keep them apprised of the litigation's progress. Safeco retained no engineering or medical experts to evaluate liability or damages. U.S. Fire did not learn until the third week that the case was in trial. U.S. Fire then retained outside counsel to evaluate the case. Counsel determined that there was a serious likelihood of a verdict against Austin in excess of all Austin's insurance coverage. During the fifth week of trial, Safeco unconditionally offered to combine its policy limits with those of U.S. Fire and another insurer to settle the case against Austin.

Fortman already had presented much evidence against Austin. After the Austin settlement, because the court ruled that the limits on joint and several liability incorporated in Proposition 51 would retroactively apply, Fortman presented no further evidence or argument against Austin. Fortman then directed the case exclusively against the jeep manufacturer and sought to exculpate Austin. However, Austin was included in the special verdict and the jury was asked to apportion responsibility to it for Fort-

man's injuries. The jury awarded Fortman nearly $24 million, and found Fortman's mother 75 percent, the manufacturer 25 percent, and Austin 0 percent responsible for Fortman's injuries. After the verdict, the court reversed itself regarding the retroactivity of Proposition 51 and entered judgment against the manufacturer for the total jury award. No judgment was entered regarding Austin.

After Fortman filed this equitable subrogation action, Safeco moved for summary judgment. The trial court granted Safeco's motion and stated: "[A]s a matter of law, [Fortman] fails to state a cause of action for breach of the implied covenant of good faith and fair dealing against defendant Safeco Insurance Company, under a theory of equitable subrogation, since an essential prerequisite to any such action requires that there be a judgment against the primary carrier's insured in excess of the policy limits, which has not been satisfied here. As a further basis for its decision, the court is also influenced by the fact that the jury in the underlying personal injury lawsuit considered the question as to whether Safeco's insured was liable and reached a negative finding."

## ISSUES

Fortman contends: (I) a judgment against Austin in excess of its primary policy limits is not a prerequisite to an equitable subrogation action by U.S. Fire against Safeco; and (II) the jury verdict finding Austin not responsible for her injuries does not bar her suit.

## DISCUSSION

## I

Preliminarily, as conceded by the parties, we note that the facts are undisputed. The trial court resolved no factual disputes, made no factual findings, and determined both issues raised by Fortman exclusively as matters of law. Thus, we independently review the trial court's legal conclusions. (Code Civ. Proc., § 437c, subd. (c); see *AARTS Productions, Inc.* v. *Crocker National Bank* (1986) 179 Cal.App.3d 1061, 1064-1065 [225 Cal.Rptr. 203].)

 Fortman contends that because U.S. Fire actually paid $1,125,000 as part of the Austin settlement, and did so only because Safeco unreasonably refused offers to settle the case within Safeco's policy limits, the absence of a judgment against Austin in excess of Safeco's policy limits does not bar her equitable subrogation action. Safeco argues that an excess judgment is a legal prerequisite to Fortman's equitable subrogation suit.

Fortman's contention is well taken. Safeco's argument ignores the substantial distinction between a claimant's action against a tortfeasor's liability insurer, and a suit between insurers to determine and prorate their respective responsibilities for an insured event. ■ Injured claimants may sue the tortfeasor's insurer because they are considered third party beneficiaries of the insurance contract. The judgment requirement prevents claimants' actions unless they first perfect their third party beneficiary status by securing a judgment against the insured tortfeasor. (Cf. *Zahn* v. *Canadian Indem. Co.* (1976) 57 Cal.App.3d 509, 512-514 [129 Cal.Rptr. 286].)

■ In contrast, actions between liability insurers are not based on contract. "The reciprocal rights and duties of several insurers who have covered the same event do not arise out of contract, for their agreements are not with each other. [Citations.] Their respective obligations flow from equitable principles designed to accomplish ultimate justice in the bearing of a specific burden. As these principles do not stem from agreement between the insurers their application is not controlled by the language of their contracts with the respective policy holders." (*Amer. Auto Ins. Co.* v. *Seaboard Surety Co.* (1957) 155 Cal.App.2d 192, 195-196 [318 P.2d 84]; cf. *Signal Companies, Inc.* v. *Harbor Ins. Co.* (1980) 27 Cal.3d 359, 369 [165 Cal.Rptr. 799, 612 P.2d 889, 19 A.L.R.4th 75].) These well-established principles permit insurers to resolve disputes regarding their respective rights and duties by direct actions among themselves without the limits imposed in other contexts by the direct-action proscription.

*Moradi-Shalal* v. *Fireman's Fund Ins. Companies* (1988) 46 Cal.3d 287 [250 Cal.Rptr. 116, 758 P.2d 58] does not affect this analysis. In *Moradi-Shalal*, a dissatisfied claimant directly sued the tortfeasor's insurer for statutory bad faith in breach of duties imposed by Insurance Code section 790.03. As discussed above, an equitable action between insurers to adjust their respective rights and duties is distinct from such statutory third party bad faith actions under Insurance Code section 790.03.

■ Moreover, "the assertion that a *settling* excess insurer cannot recover in excess of policy limits from a primary insurer guilty of bad faith refusal to settle is not well founded." (*Northwestern Mut. Ins. Co.* v. *Farmers' Ins. Group* (1978) 76 Cal.App.3d 1031, 1049 [143 Cal.Rptr. 415], italics added.) "[W]e entertain no doubt that an excess insurer which has *settled and discharged the insured's liability* may recover from the primary insurer an amount in excess of the primary insurer's policy limits if the excess insurer can prove the primary insurer's unreasonable refusal to settle within its policy limits resulted in loss to the excess insurer in an amount in excess

of the policy limits of the primary insurer it would not otherwise have had." (*Id.* at p. 1050, italics added.)

While Safeco correctly notes that the quoted passages are *dicta* because in *Northwestern* the underlying wrongful death cases were tried and resulted in judgments (*Northwestern Mut. Ins. Co.* v. *Farmers' Ins. Group, supra,* 76 Cal.App.3d at p. 1039), the same division later affirmed a judgment for the insured where the underlying lawsuit was settled for an amount greater than the primary insurance coverage, the excess carrier paid the balance, and assigned its equitable subrogation rights to the insured. (*Troost* v. *Estate of DeBoer* (1984) 155 Cal.App.3d 289, 293, 299 [202 Cal.Rptr. 47].) The *Troost* court quoted and followed its earlier language: " 'It is not a prerequisite to equitable subrogation that the subrogor suffered actual loss; it is required only that he would have suffered loss had the subrogee not *discharged the liability or paid the loss.*' " (*Id.* at p. 295, italics added, quoting *Northwestern Mut. Ins. Co.* v. *Farmers' Ins. Group, supra,* 76 Cal.App.3d at p. 1044.) While the parties in *Troost* did not dispute that the settlement, as opposed to a judgment, was sufficient, we agree with the discussion articulated in *Northwestern* and followed in *Troost.*

In *Continental Casualty Co.* v. *Reserve Ins. Co.* (1976) 307 Minn. 5 [238 N.W.2d 862], an excess insurance carrier settled a liability case during trial over the express objections of the primary carrier, and then sued the primary carrier. The trial court dismissed the case before trial because there was no prior judicial determination of the insured's liability. However, the Minnesota Supreme Court reversed and we find its discussion persuasive: "[T]he excess insurer again is in the same position as its subrogor, the insured. In such a case the insured should certainly be able to protect itself by settling a claim against it within primary policy limits, and then recovering from its primary insurer who refused to settle in bad faith. In that lawsuit the primary insurer could claim that the insured was not liable or liable for less than its policy limits and those questions could be tried by the jury along with the general issue of bad faith. Since bad-faith failure to settle occurs prior to trial, and the relevant standard involves evaluation of the insurer's decision at the time it is made and not from hindsight, we see no reason to allow the primary insurer to force a trial of the principal action. [Citation.]" (*Id.* at pp. 13-14, fns. omitted.)

Although it did not discuss this issue at length, the First Appellate District recently affirmed a judgment for an excess insurance carrier which settled the underlying case against *its insured for an amount in excess of the* primary coverage and sued the primary carrier in an equitable subrogation action for bad faith refusal to settle. (*Continental Casualty Company* v. *Royal Ins.* (1990) 219 Cal.App.3d 111, 114, 126 [202 Cal.Rptr. 47].) Thus,

the distinction between equitable subrogation actions and statutory third party bad faith claims is well grounded in prior case law.

■ ■ ■ ■ ■ Even in the related context of statutory bad faith actions under Insurance Code section 790.03, subdivision (h), a conclusive judicial determination is not a prerequisite in first party, as opposed to third party (*Royal Globe Ins. Co.* v. *Superior Court* (1979) 23 Cal.3d 880 [153 Cal.Rptr. 842, 592 P.2d 329], overruled in *Moradi-Shalal* v. *Fireman's Fund Ins. Companies, supra,* 46 Cal.3d at p. 304) actions. (*Continental Casualty Co.* v. *Royal Ins. Co., supra,* 219 Cal.App.3d at p. 126; *Bodenhamer* v. *Superior Court* (1987) 192 Cal.App.3d 1472, 1480 [238 Cal.Rptr. 177].)[1] Safeco concedes this is a first party action. Moreover, as discussed above, an equitable subrogation action is wholly distinct from a statutory bad faith action.

■ On this record, Safeco repeatedly, and allegedly in bad faith, refused settlement offers below its policy limits. Had the case been settled for any of those amounts, U.S. Fire would have paid nothing. Instead, U.S. Fire actually paid $1,125,000 toward the eventual settlement. If we adopted Safeco's position, U.S. Fire would suffer that loss without a remedy. On the other hand, an excess insurer who proceeded to trial and was required to pay any portion of a resulting judgment would be able to prosecute a similar action. Doing so might expose the excess insurer to a bad faith claim by the insured. Such a rule would encourage trials in cases which otherwise might settle.

Safeco relies on several cases which it claims require a prior excess judgment as a prerequisite to bad faith suits by insureds against their insurers. (See, among others, *Nationwide Ins. Co.* v. *Superior Court* (1982) 128 Cal.App.3d 711, 713-715 [180 Cal.Rptr. 464]; *Doser* v. *Middlesex Mutual Ins. Co.* (1980) 101 Cal.App.3d 883, 890-894 [162 Cal.Rptr. 115].) However, none of those cases involves equitable subrogation, and none addresses the authority discussed above. *Nationwide* was a third party statutory *Royal Globe* action. While *Doser* was a first party case, it involved a tort plaintiff who negotiated a $980,000 settlement with an insolvent defendant who was covered by a $100,000 insurance policy. The defendant then satisfied the settlement by assigning its rights against its insurer to the plaintiff, who dismissed the underlying wrongful death case and sued the insurer for bad

---

[1] Even in the third party statutory *Royal Globe* context, a stipulated judgment, but not a settlement, would provide the required final judicial determination of liability. (*California State Auto. Assn. Inter-Ins. Bureau* v. *Superior Court* (1990) 50 Cal.3d 658 [268 Cal.Rptr. 284, 788 P.2d 1156].) There are substantial distinctions between a settlement and a stipulated judgment. (*Id.* at pp. 663-665.) However, in our case, while the jury determined Austin's lack of responsibility for Fortman's injury, no resulting judgment was filed.

faith. The trial court sustained the insurer's demurrer without leave to amend, and the appellate court affirmed, noting that the "settlement" appeared collusive because its value had no evidentiary support and may have been designed to create an arbitrary, inflated loss.

Safeco claims our failure to adopt its proposed rule would encourage sham settlements and collusive agreements between excess insurers and tort plaintiffs. In the situation before us, however, those possibilities do not exist. U.S. Fire actually paid $1,125,000 because of Safeco's refusal to settle within Safeco's policy limits. In the cases cited by Safeco, the insured must show the existence, not actual payment, of an excess judgment. In the equitable subrogation context before us, the excess insurer must show it actually paid an amount in excess of the primary insurer's policy limits. Courts easily could distinguish equitable subrogation cases with facts suggesting a collusive settlement from cases like this one in which the excess insurer actually paid a settlement. *The trial court erred in requiring an excess judgment.*

II*

. . . . . . . . . . . . . . . . . . . .

DISPOSITION

We reverse the judgment. Fortman is entitled to costs on appeal.

Spencer, P. J., and Devich, J., concurred.

Respondent's petition for review by the Supreme Court was denied September 19, 1990.

---

*See footnote, *ante,* page 1394.