[No. C011374. Third Dist. Nov. 10, 1992.]

WILLIAM BUSH et al., Petitioners, v.
THE SUPERIOR COURT OF SACRAMENTO COUNTY, Respondent;
D. W. RAINS et al., Real Parties in Interest.

COUNSEL

Wilke, Fleury, Hoffelt, Gould & Birney, Philip R. Birney, Peter J. Pullen, Hardy, Erich, Brown & Wilson and John Quincy Brown III for Petitioners.

No appearance for Respondent.

Shernoff, Bidart & Darras, Randy D. Curry and William M. Shernoff for Real Parties in Interest.

OPINION

**BLEASE, Acting P. J**—In this mandamus proceeding we decide that plaintiffs (the Rains) may settle their claims against one concurrent tortfeasor by taking as part of the settlement an assignment of that tortfeasor's *American Motorcycle*[1] claim for equitable indemnity against other concurrent tortfeasors. The petitioners are defendants in an action brought by the Rains as assignees of the *American Motorcycle* claim. Petitioners seek relief from the overruling of their demurrers. They say the assignment violates public policy and the action should be abated because there is another action pending on the same cause of action, the Rains' personal injury tort action against them. We issued an alternative writ of mandate to consider the novel questions of law posed.

We will deny the petition. The California rule is that a chose in action is presumptively assignable (Civ. Code, §§ 953, 954) and petitioners have shown no good reason why they should be excepted from its application.

Petitioners' most troublesome claim is that if the Rains prevail in both the indemnity and tort actions they will recover more than full compensation for their injuries because the assignment has value only if the settling tortfeasor paid more for the Rains' injuries than is warranted by its comparative share of fault. The rhetorical force of this argument lies in the failure to recognize that in the indemnity action the Rains stand in the shoes of the settling party; it is the settling party's money that is in issue. If the assignment has value it is the petitioners who seek a windfall, an offset of the excess paid by the settling party which is attributable to *petitioners'* share of fault.

Thus, we will reject petitioners' claim for two reasons. First, if such a recovery occurs it will not be at the expense of petitioners—the most *they*

---

[1] *American Motorcycle Assn.* v. *Superior Court* (1978) 20 Cal.3d 578 [146 Cal.Rptr. 182, 578 P.2d 899].

will be asked to bear is "liability for damage . . . in direct proportion to *their* respective fault," the same exposure to liability that existed before the assignment. (*Li* v. *Yellow Cab Co.* (1975) 13 Cal.3d 804, 813 [119 Cal.Rptr. 858, 532 P.2d 1226, 78 A.L.R.3d 393], italics added.) The Rains would receive by means of the assignment only that to which the settling tortfeasor was entitled. Second, the policy against overcompensation does not outweigh the policy of fostering settlement which is advanced by permitting such an assignment.

## FACTS AND PROCEDURAL BACKGROUND

In light of the generic nature of petitioners' claims the necessary background may be stated briefly. After their home burned, D. W. and O. L. Rains, real parties in interest, sued their fire insurance carrier, State Farm Fire and Casualty Insurance Company (State Farm), alleging that in bad faith it failed to pay benefits due them under the insurance policy and that O. L. Rains suffered consequential and severe emotional distress. In a separate action O. L. Rains sued petitioners Robert Wright and William Bush for medical malpractice and American Therapeutics, Inc., for products liability alleging that permanent physical injuries arose from the side effects of a drug prescribed in the treatment of the emotional distress.

The Rains settled the bad faith action with State Farm for $1,750,000 and an assignment of its claims against the petitioners and American Therapeutics, Inc., for equitable indemnity. The Rains then filed the complaint in this action for the amount paid by State Farm to them which is attributable to petitioners' comparative fault. Petitioners demurred on grounds that the complaint failed to state a cause of action and that there is another action pending between the same parties on the same cause of action. The superior court overruled the demurrers.

## DISCUSSION

### Introduction

In *Li* v. *Yellow Cab Co., supra,* 13 Cal.3d 804, the California Supreme Court discarded the common law rule under which a plaintiff's contributory negligence barred recovery in tort. It adopted a rule of comparative negligence, "a system under which liability for damage will be borne by those whose negligence caused it in direct proportion to their respective fault." (*Id.* at p. 813, fn. omitted.) In *American Motorcycle, supra,* 20 Cal.3d 578, it discarded the analogous all-or-nothing cause of action for equitable indemnity between tortfeasors and replaced it with a rule of partial indemnity. "In

order to attain [the system envisioned in *Li*], in which liability for an indivisible injury caused by concurrent tortfeasors will be borne by each individual tortfeasor 'in direct proportion to [his] respective fault,' we conclude that the current equitable indemnity rule should be modified to permit a concurrent tortfeasor to obtain partial indemnity from other concurrent tortfeasors on a comparative fault basis." (*Id.* at p. 598.)

The issues are whether such a cause of action lawfully may be assigned to the plaintiff, and if so, whether an action upon the assignment can be maintained when the plaintiff is also suing other concurrent tortfeasors on the underlying tort. Petitioners contend that in these circumstances an action on the assignment would offend traditional principles of equity and indemnity and violate public policy.

I

A. *An American Motorcycle Claim Is Assignable to a Third Party.*

■ The right to equitable indemnity stems from the principle that one who has been compelled to pay damages which ought to have been paid by another wrongdoer may recover from that wrongdoer. ■ Petitioners argue that the Rains' complaint is deficient because it fails to plead that *they* were compelled to pay damages. The argument neglects the elementary consideration that an assignee of a chose in action does not sue in his own right but stands in the shoes of the assignor. (See, e.g., *Brown* v. *Guarantee Ins. Co.* (1957) 155 Cal.App.2d 679, 695-696 [319 P.2d 69, 66 A.L.R.2d 1202].) A thing or chose in action would never be assignable if the assignee independently had to meet the requirements already satisfied by the assignor. If he could meet the requirements he would need no assignment; if not he could not use the assignment.

Under the early English common law the doctrines of champerty and maintenance prohibited an assignment of a chose in action. (See, e.g., 14 Am.Jur.2d, Champerty and Maintenance, § 1, p. 842.) In California this common law doctrine has been superceded by statute. ■ "[S]ections 953 and 954 of the Civil Code [of 1872] have lifted many of the restrictions imposed by the rule of the common law upon this subject." (*Wikstrom* v. *Yolo Fliers Club* (1929) 206 Cal. 461, 464 [274 P. 959]; *Jackson* v. *Deauville Holding Co.* (1933) 219 Cal. 498, 501 [27 P.2d 643].) These presently provide: "A thing in action is a right to recover money or other personal property by a judicial proceeding." (Civ. Code, § 953.) "A thing in action, arising out of the violation of a right of property, or out of an obligation, may be transferred by the owner." (Civ. Code, §§ 954, 1458.)

These statutes establish the policy of the state, the " 'assignability of things [in action] is now the rule; nonassignability, the exception; and this exception is confined to wrongs done to the person, the reputation, or the feelings of the injured party. . . .' " (*Webb* v. *Pillsbury* (1943) 23 Cal.2d 324, 327 [144 P.2d 1, 150 A.L.R. 504], brackets in *Webb*; see also *Wikstrom, supra,* 206 Cal. at p. 463; *Jackson, supra,* 219 Cal. at p. 500.) ▮ For this reason it is petitioners' burden to show that some exception to the rule applies in this case. They fail to do so.

They argue that no precedent has "authorized" a plaintiff in a tort action to acquire an *American Motorcycle* claim by assignment. They offer nothing to suggest that such a claim is per se unassignable, e.g., unassignable to a bona fide third party purchaser. The thing assigned is not a wrong which is personal to the holder of the right of indemnity, as is shown by analogous rights which have been held assignable. ▮ For example, a subrogation right is assignable. (See, e.g., *Quinn* v. *Warnes* (1983) 144 Cal.App.3d 309 [192 Cal.Rptr. 660], upholding an assignment of subrogation rights by a worker's compensation insurance carrier to the third party tort defendant.)

A subrogation right bears a strong resemblance to the right to equitable indemnity sanctioned by *American Motorcycle.*

"Subrogation is an *equitable remedy* which arises under the following basic circumstances: (1) The obligor (defendant) owes a debt or duty of some kind to the creditor (subrogor). (2) The subrogee (plaintiff), pursuant to his own obligation to the creditor, pays that debt or discharges that duty. (3) These circumstances make it inequitable that the subrogee should bear the loss while the obligor is unjustly enriched." (4 Witkin, Cal. Procedure (3d ed. 1985) Pleading, § 112, p. 147, original italics.) Under *American Motorcycle* the tortfeasor from whom the plaintiff first recovers is in effect a subrogee, entitled to recover insofar as it has borne liability for damages attributable to the fault of other concurrent tortfeasors.

Another analogous remedy is contribution. (See 4 Pomeroy, Equity Jurisprudence (5th ed. 1941) § 1416, p. 1070.) While we have found no California authority on point, out-of-state cases hold that such a chose in action is assignable. (See, e.g., *McKay* v. *Citizens Rapid Transit Co.* (1950) 190 Va. 851 [59 S.E.2d. 121, 20 A.L.R.2d 918].)

▮ Thus, if the assignment of an *American Motorcycle* claim offends traditional doctrines of indemnity it must arise from the status of the assignee as the plaintiff in the tort action rather than the fact of assignment per se.

B. *Assignment of an American Motorcycle Claim to a Tort Plaintiff Offends No Traditional Principle of Indemnity.*

The Rains rely on *Fortman* v. *Safeco Ins. Co.* (1990) 221 Cal.App.3d 1394 [271 Cal.Rptr. 117] as a precedent upholding an "assignment of a cause of action for equitable indemnity" to the tort plaintiff. In that case the plaintiff in a tort action settled with the defendant and his excess insurance coverage carrier; the latter settlement was for $1,125,000 of its $2 million policy limits and an assignment of its equitable subrogation claim against the defendant's primary insurer. The primary insurer had repeatedly rejected settlement offers within the primary insurance policy limits. (*Id.* at pp. 1396-1397.) While *Fortman* is an example of an assignment of a subrogation claim to the original obligor, it furnishes little precedential support because the issue whether such an assignment could be made was not discussed.

 ██ ██ However, *Fortman* does point to a closely related claim as to which assignment to the tort plaintiff has been sanctioned by case law, a first party insurance bad faith claim.[2]

"We have thus determined that the insured's cause of action for wrongful refusal to settle could validly pass to the trustee in bankruptcy and be assigned by him to others. Therefore, the complaint states facts sufficient to constitute a cause of action by plaintiff (as successor in interest of the insured) against defendant. This result may seem anomalous in that the plaintiff, who previously offered to settle his claim for $5,000, has now acquired the right to maintain against defendant insurer an action which arose by reason of that offer to settle. But it must be borne in mind that plaintiff merely stands in the shoes of the insured; it is the insured who has allegedly suffered the wrong at the hands of the insurer. It might be said that the result reached herein will cause more injured claimants to propose settlement for the policy limit when the insurance company is defending the action against an insured who is apparently judgment-proof. Yet the insurer has nothing to fear so long as its refusal to settle is made in good faith. And it is fundamental that the law favors settlements." (*Brown, supra,* 155 Cal.App.2d at pp. 695-696, cited with approval in *Comunale* v. *Traders & General Ins. Co.* (1958) 50 Cal.2d 654, 661 [328 P.2d 198, 68 A.L.R.2d 883]; also see *Critz* v. *Farmers Ins. Group* (1964) 230 Cal.App.2d 788 [41 Cal.Rptr. 401, 12 A.L.R.3d 1142], upholding against an argument it violates public policy such an assignment made prior to judgment in return for a covenant not to execute on the judgment.)

---

[2]Such a claim is not fully assignable. The part of the claim, if any, for the insured's emotional distress or punitive damages cannot be assigned. (*Murphy* v. *Allstate Insurance Co.* (1976) 17 Cal.3d 937, 942 [132 Cal.Rptr. 424, 553 P.2d 584].)

A first party bad faith claim for an insurance company's refusal to settle also resembles a subrogation claim. The insured, in suffering an excess judgment or exposure to an excess judgment, is called upon to bear a portion of the tort plaintiff's loss that should have been "borne" by the insurer by accepting the earlier settlement offer within policy limits. Accordingly the insured's incremental loss is shifted to the insurance company obligor.

Petitioners argue that *Fortman* is inapposite. Presumably they would make the same argument as to first-party insurance bad-faith-claim assignments. Both kinds of claim are related to the plaintiff's underlying tort cause of action. In both the recovery is calculated based on plaintiff's tort damages ascertained at trial. It is true that the conduct of the defendant upon which the bad faith claim is founded differs from that here. In bad faith cases the pertinent conduct is the failure to settle in good faith. In the *American Motorcycle* context it is the nonsettling defendant's tortious conduct which causes harm to plaintiff, considered in comparison to the culpable conduct of the settling defendant. That is a closer relationship to the issues in the underlying tort action. However, petitioners do not explain why the greater degree of convergence is meaningful.

Petitioners suggest as to a bad faith claim that assignment is permitted in part because it vindicates the policy that insurance companies should fulfill their legal obligations to settle in good faith. However, one might as easily say that the assignment of an *American Motorcycle* claim vindicates the policies expressed in *Li* and in the defendant's duty in tort, i.e., that the defendant bear liability for plaintiff's harm in full proportion to the share of fault. Petitioners do not suggest in what manner their arguments bear on "traditional equity and indemnity principles." We find them unpersuasive.

Petitioners argue that the assignment cannot be upheld because the settlement was collusive as a matter of law, i.e., it "aimed to injure" their interests. However, as we shall show, petitioners are not exposed to any greater liability or burden than would be the case without the assignment.

Lastly, petitioners argue that equitable indemnity will not lie on behalf of a tortfeasor who has intentionally injured the plaintiff and that the Rains pled intentional infliction of emotional distress in their complaint against State Farm. We have no occasion to reach the merits of this claim. The Rains' complaint against State Farm states causes of action for negligent and intentional torts. There is no way at this stage in the proceedings to ascertain the validity of or the weight of these claims. Assuming that recovery is legally barred on this ground the nature of State Farm's conduct is a matter of fact that must be placed in issue in the indemnity action by petitioners' answers.

### C. *The Demurrers Should Not Have Been Sustained on the Ground of Abatement.*

■ Petitioners argue that the trial court should have sustained their demurrers because "[t]here is another action pending between the same parties on the same cause of action." (Code Civ. Proc., § 430.10, subd. (c).) However, the *American Motorcycle* indemnity action and the plaintiff's tort action are not on the same cause of action.

■ The identity of two causes of action is determined by a comparison of the facts alleged which show the nature of the invasion of plaintiff's primary right.

"California follows the 'primary right theory' of Pomeroy: 'Every judicial action must therefore involve the following elements: a *primary right* possessed by the plaintiff, and a corresponding *primary duty* devolving upon the defendant; a *delict or wrong* done by the defendant which consisted in a breach of such primary right and duty; a *remedial right* in favor of the plaintiff, and a remedial duty resting on the defendant springing from this delict, and finally the *remedy or relief* itself. . . . Of these elements, the *primary right and duty and the delict or wrong combined constitute the cause of action.* . . .' " (4 Witkin, Cal. Procedure, *supra*, Pleading, § 23, pp. 66-67, original italics.)

■ The primary right in O. L. Rains's tort action is his right to freedom from bodily harm caused by negligence. The primary right in the *American Motorcycle* indemnity action is State Farm's right to freedom from disproportionate liability for damages attributable to the negligence of the concurrent tortfeasors. These are different primary rights. Even as pled the tort actions against State Farm and petitioners are based upon different causes of action. (See *Ash* v. *Mortensen* (1944) 24 Cal.2d 654, 657 [150 P.2d 876].)

Petitioners argue that the causes of action are identical because a finding in either action on a petitioner's negligence would be res judicata in the other action. That is not correct. It rests on a confusion between issue and claim preclusion. (See Rest.2d Judgments, §§ 17-19, 27.) A finding in either action would give rise to collateral estoppel, or issue preclusion. But, because the causes of action are not the same, it would not give rise to res judicata or claim preclusion.

## II

■ That brings us to petitioners' facially appealing argument—that the Rains should not be permitted to maintain the action on the assignment

because if they prevail O. L. Rains will obtain more than full compensation for his damages. Petitioners correctly note that neither equitable indemnity nor assignments of choses in action are permitted in derogation of public policy. (See, e.g., *Platt* v. *Coldwell Banker Residential Real Estate Services* (1990) 217 Cal.App.3d 1439, 1444-1445 [266 Cal.Rptr. 601].) They submit that the prospect of excess recovery must be nipped in the bud on this ground. We disagree. As in *Brown, supra,* 155 Cal.App.2d 697, we accept the anomaly because the petitioners ought not profit from *their* wrong and because it advances another public policy—the fundamental policy that the law favors settlements.

There is a possibility of recovery greater than the full measure of damages in tort. If O. L. Rains prevails in the *American Motorcycle* action he will also recover in his tort action, barring some procedural misadventure. O. L. Rains's recovery in the tort actions against petitioners and American Therapeutics, Inc., cannot exceed the amount of his damages less the portion of the State Farm settlement attributable to those damages. (Code Civ. Proc., § 877, subd. (a).) The aggregate recovery in the tort actions will equal his damages. Hence, a recovery in the *American Motorcycle* action would provide him with something more than the amount of his total tort damages as measured by the litigation.

Petitioners rely on the general principle which opposes the granting of relief where the result is a recovery greater than one full measure of compensation. (See, e.g., *Ash, supra,* 24 Cal.2d 654; 6 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 1322, p. 779.) They cite to *Hartley* v. *St. Francis Hospital* (1964) 24 Wis.2d 396 [129 N.W.2d 235], opinion on denial of rehearing (1964) 130 N.W.2d 1, as a precedent for applying this principle to bar the assignment here.

In *Hartley* the tort plaintiff was crushed by a truck and in the course of treatment he was reinjured by an employee of St. Francis Hospital. Plaintiff settled his action with the truck owner for the liability insurance policy limits and a promissory note, aggregating far less than his claimed damages. He did so by means of a general release in which he failed to reserve explicitly his right to sue the hospital. The "major issue" was whether this settlement barred his tort claim on the theory it was conclusively presumed that the settlement included compensation for the medical malpractice injuries. (24 Wis.2d at p. 400.) The *Hartley* court held that the claim was barred under the now discredited common law rule that a release discharges the liability of concurrent tortfeasors. (See e.g., *Milicevich* v. *Sacramento Medical Center* (1984) 155 Cal.App.3d 997, 1006, fn. 12 [202 Cal.Rptr. 484]; Prosser & Keeton, Torts (5th ed. 1984) pp. 332-334.) The Wisconsin Supreme Court overruled *Hartley* on this point in *Krenz* v. *Medical Protective Co. of Fort Wayne, Ind.* (1973) 57 Wis.2d 387 [204 N.W.2d 663].)

The minor issue in *Hartley* arose out of the plaintiff's efforts to cure the misstep which had doomed his tort claim under the application of the common law rule. Seven months after his ill-advised settlement the plaintiff obtained from the truck owner's insurance company an assignment of any claim for damages it might have had against the hospital and he sought to recover under the assignment. (24 Wis.2d at p. 398.) The *Hartley* court was not receptive to this stratagem for avoiding the strictures of the common law rule. While perplexed as to the nature of the chose in action assigned (originally viewed as a question of indemnity but changed to subrogation on rehearing), the court refused to sanction the assignment because the settlement and release had fixed the value of his damages at $25,000 and it would be contrary to public policy to allow him a further recovery.

In *Krenz, supra,* the court suggested that *Hartley's* original characterization of the chose in action as sounding in indemnity was analytically embarrassing. "If, however, the right of the first tortfeasor were simply based upon his payment of a claim, part of which the doctor should have paid, the first tortfeasor's right against the doctor logically would not have been derived from the injured party but would be one of indemnity. This theory, while adopted in the opinion of the court, was repudiated on rehearing and the subrogation theory that the first tortfeasor in the settlement acquired the right of the injured party to sue the doctor was adhered to." (204 N.W.2d at p. 669.)

The force of *Hartley*, as a precedent on the point for which petitioners cite it, is diminished by its argumentative shortcomings and reliance on a common law rule which has now been repudiated in Wisconsin. Under California law the Rains' chose in action is not predicated upon the subrogation of their cause of action, but upon equitable indemnity, the assignment of State Farm's payment of a claim which petitioners ought to have paid. Aside from these analytic concerns, the facts of this case critically differ from those in *Hartley*.

The assignment of State Farm's *American Motorcycle* equitable indemnity claim occurred as a part of the consideration for a *settlement*. California has a strong public policy in favor of encouraging settlement. (See, e.g., *American Motorcycle, supra,* 20 Cal.3d at p. 603; *Milicevich, supra,* 155 Cal.App.3d at p. 1006; *Brown, supra,* 155 Cal.App.2d at p. 696.) Sanctioning the assignment of an *American Motorcycle* chose in action to the tort plaintiff fosters settlement with the tortfeasor most willing to settle. In this case the

assignment appears to have been a valuable consideration to the Rains, since they bargained for it in the settlement agreement.[2]

We do not disagree with the public policy that, all things being equal, the plaintiff should recover no more than full compensation for an injury. A cause of action is not a lottery ticket. But, as with every such policy, the policy against excess recovery must be balanced against other germane public policies. (See *Roe* v. *Workmen's Comp. Appeals Bd.* (1974) 12 Cal.3d 884, 888 [117 Cal.Rptr. 683, 528 P.2d 771].) In *Roe*, for example, the Supreme Court held that, despite the policy against excess recovery, a workers' compensation insurance carrier could not obtain a credit before the Workers' Compensation Appeals Board, notwithstanding a full third party recovery, if the employer had been negligent.

■ California law, in the main, adheres to the collateral source rule. (See, e.g., *Helfend* v. *Southern Cal. Rapid Transit Dist.* (1970) 2 Cal.3d 1, 10-14 [84 Cal.Rptr. 173, 465 P.2d 61, 77 A.L.R.3d 398]; 6 Witkin, Summary of Cal. Law, *op. cit. supra*, Torts, §§ 1388-1396.) In part this is justified on the ground that, because the injured plaintiff must bear its own attorney fees, the plaintiff rarely receives full compensation for the injuries as computed by the jury in the tort action. (*Helfend*, 2 Cal.3d at pp. 12-13.) This consideration is applicable here. ■ A further consideration is that, "[i]n any event, it is clear the possibility of a double recovery in favor of [plaintiff] will not impose a double burden on [the tortfeasor who] bears responsibility only for the single burden of his wrong." (*Phillip Chang & Sons Associates* v. *La Casa Novato* (1986) 177 Cal.App.3d 159, 170 [222 Cal.Rptr. 800].)

In this case petitioners, if liable, are subject to damages in the tort action by O. L. Rains measured by his total damages minus the value of the portion of the State Farm settlement attributable to those damages. In the *American*

---

[2]Of course, if the Rains prevail on the *American Motorcycle* cause of action then State Farm gave up something of additional value by agreeing to its assignment. However, the tort plaintiff might place a greater value on the *American Motorcycle* chose in action than the settling tortfeasor. This could result from a different evaluation of various matters, e.g., the strength of the case against other alleged tortfeasors.

In the kind of case presented here the tort plaintiff may more strongly desire the assignment to eliminate the settling tortfeasor as a future adversary. If there is no assignment State Farm and the Rains have adverse interests after the settlement. To maximize its *American Motorcycle* recovery State Farm would have an interest in maximizing the amount of the settlement that will be attributed to damages for which it shares responsibility with petitioners. The Rains would have the opposite interest since O. L. Rains's recovery in tort is inversely proportioned to that amount. Petitioners could reasonably insist that these matters be adjudicated in one proceeding to prevent different answers to this question. But that would effectively place State Farm and the Rains as litigation adversaries despite their settlement.

*Motorcycle* assignment action the measure of exposure is the value of the portion of the State Farm settlement attributable to O. L. Rains's tort damages minus State Farm's proportional share of those damages. The result is that the maximum aggregate exposure for each petitioner is O. L. Rains's total tort damages times each petitioner's share of fault—or as *American Motorcycle* has it, the "liability . . . borne by each individual tortfeasor 'in direct proportion to [his] respective fault . . . .' " (20 Cal.3d at p. 598.) As to petitioners this presents no unfairness.

As *Roe, supra,* explains, the policy against excess recovery is primarily designed to prevent the imposition of a disproportionate burden on the protected tortfeasor. (12 Cal.3d at p. 889.) When one who is asked to bear no more than his or her proportionate share raises this shield he or she implicitly complains on behalf of another tortfeasor who has borne a disproportionate share. This prompts the rhetorical question: " 'What's Hecuba to him or he to Hecuba, that he should weep for her?' " (*Ibid.*) Petitioners offer no persuasive argument why they should be allowed to impugn State Farm's settlement and assignment on the ground that *State Farm* may have borne more than its proportionate share of liability. (Compare 12 West's U.Laws Ann. (1992 pocket pt.) Comparative Fault Act, § 6: settlement does not release other tortfeasors, "However, the claim of the [tort plaintiff] against other persons is reduced by the amount of the released person's equitable share of the obligation . . . .")

For all of the foregoing reasons, we conclude that the trial court did not err in overruling petitioners' demurrers. The alternative writ is discharged. The petitions are denied.

Sims, J., and Scotland, J., concurred.

Petitioners' applications for review by the Supreme Court were denied February 18, 1993. Panelli, J., and Kennard, J., were of the opinion that the applications should be granted.