[No. B184637. Second Dist., Div. Two. July 7, 2006.]

RLI INSURANCE COMPANY, Plaintiff and Appellant, v.
CNA CASUALTY OF CALIFORNIA, Defendant and Respondent.

**COUNSEL**

Pretzel & Stouffer, Swanson, Martin & Bell, Daniel G. Wills; Howard, Loveder, Strickroth & Parker and Michael J. Strickroth for Plaintiff and Appellant.

Cannon & Nelms, Derrick R. Sturm; Carroll, Burdick & McDonough, Rodney L. Eshelman and Laurie J. Hepler for Defendant and Respondent.

**OPINION**

**BOREN, P. J.**—A primary insurer and an excess insurer each paid $1 million to settle a claim against their insured, who was involved in a fatal traffic accident. After the case against the insured settled, the excess insurer brought this equitable subrogation action against the primary insurer, alleging that the primary insurer unreasonably refused an offer to settle the tort claim against the insured for an amount within the primary insurer's $1 million policy limit.

■ The trial court correctly granted judgment on the pleadings in favor of the primary insurer. The excess insurer cannot maintain a subrogation action against the primary insurer, based on an unreasonable refusal to settle the underlying tort claim, because the tort claim did not go to trial, and no excess judgment was entered against the insured. We decline to follow a contrary rule set forth in *Fortman v. Safeco Ins. Co.* (1990) 221 Cal.App.3d 1394 [271 Cal.Rptr. 117] (*Fortman*).

## FACTS

Appellant RLI Insurance Company and respondent CNA Casualty of California are liability insurers for Jim Aartman, Inc. (Aartman). CNA provides Aartman with $1 million in primary coverage under a general liability policy. RLI provides Aartman with excess liability coverage of $1 million. CNA will be referred to in this opinion as "the primary insurer" and RLI will be referred to as "the excess insurer."

Aartman was involved in a traffic accident that killed a man named Bodirsky. Bodirsky's survivors sued Aartman (the Bodirsky lawsuit). The Bodirskys offered to settle their claim against Aartman for $1 million. The primary insurer rejected the proffered settlement, which was within the limit of its general liability policy. One year later, the Bodirsky lawsuit settled for $2 million: the primary insurer paid $1 million and the excess insurer paid $1 million. The complaint does not allege that Aartman paid anything to the Bodirskys.

The excess insurer has now sued the primary insurer, asserting an equitable subrogation claim. The excess insurer alleges that the primary insurer "failed to accept a reasonable settlement demand [in the Bodirsky lawsuit] within its policy limits. As a result, the settlement paid on behalf of Jim Aartman, Inc., was $2,000,000 rather than $1,000,000." According to the excess insurer, the failure to accept a settlement offer gives rise to "an existing, assignable cause of action" against the primary insurer. The excess insurer seeks to have the primary insurer bear the entire cost of the Bodirsky settlement.

The primary insurer moved for judgment on the pleadings. It argued that because the Bodirsky lawsuit settled, instead of being litigated to judgment, the excess insurer has no right to pursue a subrogation claim. The trial court agreed with the primary insurer's interpretation of the law, and entered judgment against the excess insurer.

## DISCUSSION

### 1. *Appeal and Review*

Appeal lies from the judgment. (Code Civ. Proc., § 904.1, subd. (a)(1); *Adohr Milk Farms, Inc. v. Love* (1967) 255 Cal.App.2d 366, 369 [63 Cal.Rptr. 123].) An order granting a motion for judgment on the pleadings is subject to independent appellate review to determine whether, as a matter of law, the factual allegations in the complaint are sufficient to constitute a cause of action. (*Gerawan Farming, Inc. v. Lyons* (2000) 24 Cal.4th 468, 515 [101 Cal.Rptr.2d 470, 12 P.3d 720].) We accept as true the plaintiff's factual allegations, and give them a liberal interpretation. (*Id.* at pp. 515–516.)

### 2. *Overview of the Doctrine of Equitable Subrogation*

■ " 'Equitable subrogation permits a party who has been required to satisfy a loss created by a third party's wrongful act to "step into the shoes" of the loser and pursue recovery from the responsible wrongdoer. [Citation.] In the insurance context, the doctrine permits the paying insurer to be placed in the shoes of the insured and to pursue recovery from third parties responsible to the insured for the loss for which the insurer was liable and paid.' " (*United Services Automobile Assn. v. Alaska Ins. Co.* (2001) 94 Cal.App.4th 638, 645 [114 Cal.Rptr.2d 449].) "By undertaking to indemnify or pay the principal debtor's obligation to the creditor or claimant, the 'subrogee' is equitably *subrogated* to the claimant (or 'subrogor'), and succeeds to the subrogor's rights against the obligor." (*Fireman's Fund Ins. Co. v. Maryland Casualty Co.* (1998) 65 Cal.App.4th 1279, 1291 [77 Cal.Rptr.2d 296] (*Fireman's Fund*).)

■ A claim for equitable subrogation may be pursued against a primary insurer that unreasonably refuses to settle a case within its policy limits, thereby exposing its insured (or an excess insurer) to liability on the claim. "The ability of an excess carrier to recover damages when the primary carrier unreasonably fails to settle a claim is well established in California." (*Continental Casualty Co. v. Royal Ins. Co.* (1990) 219 Cal.App.3d 111, 117 [268 Cal.Rptr. 193] (*Continental Casualty*); *Commercial Union Assurance Companies v. Safeway Stores, Inc.* (1980) 26 Cal.3d 912, 917 [164 Cal.Rptr. 709, 610 P.2d 1038] (*Commercial Union*).) It is important to emphasize, however, that the rights of the excess insurer are coequal to those of the insured: "Because subrogation rights are purely derivative, an insurer cannot acquire anything by subrogation to which the insured has no right and can claim no right the insured does not have." (*United Services Automobile Assn. v. Alaska Ins. Co, supra,* 94 Cal.App.4th at p. 645; *Fireman's Fund, supra,* 65 Cal.App.4th at p. 1292.)

3. *Aartman Has No Claim to Assert Against the Primary Insurer; Therefore, the Excess Insurer Has No Claim Against the Primary Insurer*

Because the rights of the excess insurer derive from the rights of the insured, our analysis focuses on whether the insured has a claim to assert against the primary insurer. The covenant of good faith and fair dealing that is implied into insurance contracts "imposes on an insurer the duty to accept a reasonable settlement offer within policy limits when there is a substantial likelihood of a judgment against the insured exceeding policy limits." (*Wolkowitz v. Redland Ins. Co.* (2003) 112 Cal.App.4th 154, 162 [5 Cal.Rptr.3d 95].) An insured may bring suit against an insurer that breaches the implied covenant. (*Ibid.*)

**(5)** In *Hamilton v. Maryland Casualty Co.* (2002) 27 Cal.4th 718 [117 Cal.Rptr.2d 318, 41 P.3d 128] (*Hamilton*), the Supreme Court addressed the right of an insured to sue the primary insurer for breach of the covenant of good faith and fair dealing, or assign that right to others. "An unreasonable refusal to settle may subject the insurer to liability for the entire amount of the judgment rendered against the insured, including any portion in excess of the policy limits." (*Id.* at p. 725.) An insured who suffers a loss in the form of an excess judgment has an assignable cause of action against the primary insurer. "The insured's action for breach of the contractual duty to settle may be assigned . . . regardless of whether assignments are permitted by the policy. [Citation.] Such an assignment may be made before trial, but the assignment does not become operative, and the claimant's action against the insurer does not mature, until a judgment in excess of the policy limits has been entered against the insured." (*Ibid.*; accord, *Finkelstein v. 20th Century Ins. Co.* (1992) 11 Cal.App.4th 926, 929 [14 Cal.Rptr.2d 305] ["[A]n insurance company is liable to an insured when the insurer unreasonably refuses to settle the case within the insured's policy limits *and* a 'judgment' in excess of those limits is ultimately rendered against the insured. (*Comunale v. Traders & General Ins. Co.* (1958) 50 Cal.2d 654, 661 [328 P.2d 198])"].)

In cases where the insured carries no excess insurance, the insured's action for breach of the duty to settle may be assigned to the party who obtained a judgment against the insured. In cases where the insured carries excess insurance, the insured's action for breach of the duty to settle may be assigned to the excess insurer. "Since the insured would have been able to recover from the primary carrier for a judgment in excess of policy limits caused by the carrier's wrongful refusal to settle, the excess carrier, who discharged the insured's liability as a result of this tort, stands in the shoes of the insured and should be permitted to assert all claims against the primary

carrier which the insured himself could have asserted." (*Commercial Union, supra,* 26 Cal.3d at pp. 917–918.)

■ In both the *Hamilton* case and the *Commercial Union* case, the Supreme Court made it clear that the insured's right to recover from the primary insurer hinges upon "a *judgment* in excess of policy limits." (*Commercial Union, supra,* 26 Cal.3d at pp. 917–918, italics added; *Hamilton, supra,* 27 Cal.4th at p. 725.) A pretrial *settlement* resulting in a stipulated judgment "is insufficient to show, even rebuttably, that the insured has been injured to *any* extent by [the primary insurer's] failure to settle, much less in the amount of the stipulated judgment." (*Hamilton,* at p. 726.)[1]

■ Without an excess judgment, the primary insurer's refusal to settle is not actionable: "If the insurer declines to settle and decides to go to trial and then obtains a judgment below the settlement offer or obtains a complete defense verdict, then the insured would have no cause to complain, and the insurer would have no liability. Until judgment is actually entered, the mere possibility or probability of an excess judgment does not render the refusal to settle actionable." (*Safeco Ins. Co. v. Superior Court* (1999) 71 Cal.App.4th 782, 788 [84 Cal.Rptr.2d 43], fn. omitted; *Hamilton, supra,* 27 Cal.4th at p. 727.) "[T]here is no assurance that the insured will suffer any damage from the insurer's breach of its implied obligation to accept a reasonable settlement offer" until judgment is entered against the insured after a trial. (*Wolkowitz v. Redland Ins. Co., supra,* 112 Cal.App.4th at p. 163.)

The subrogation complaint in this case alleges that the Bodirsky lawsuit settled. Missing from the complaint is the critical allegation that an excess judgment was entered against Aartman in the Bodirsky lawsuit. Because there is not an excess judgment, Aartman suffered no harm, and has no claim to assert against the primary insurer. As a result, the excess insurer has no claim to assert against the primary insurer because the subrogation rights of the excess insurer are coequal to and derivative of the rights of the insured. (*United Services Automobile Assn. v. Alaska Ins. Co., supra,* 94 Cal.App.4th at

---

[1] An exception exists where the primary insurer denies coverage, denies a defense, or delays in processing a claim. In those instances, the policyholder may make a reasonable, good faith, noncollusive settlement with the claimant, then maintain or assign an action against the primary insurer for breach of the insurer's contractual duties. When this occurs, the insured's settlement of the claim is presumptive evidence of the insured's liability on the claim. (*Hamilton, supra,* 27 Cal.4th at pp. 728–729; *Diamond Heights Homeowners Assn. v. National American Ins. Co.* (1991) 227 Cal.App.3d 563, 581 [277 Cal.Rptr. 906].) In the case at bench, there is no allegation that the primary insurer denied coverage, denied a defense, or delayed in processing the claim. Moreover, there is no allegation here that the insured actually contributed a payment to conclude the settlement, when faced with the primary insurer's unreasonable rejection of a settlement demand within the policy limits. (*Hamilton, supra,* 27 Cal.4th at p. 731, citing *Isaacson v. California Ins. Guarantee Assn.* (1988) 44 Cal.3d 775 [244 Cal.Rptr. 655, 750 P.2d 297].)

p. 645.) The excess insurer cannot sue the primary insurer for failure to settle within the limits of the primary insurer's policy, absent an excess judgment against the insured.

### 4. *We Decline to Follow the Fortman Case*

*Fortman* addresses the right of an excess insurer to sue a primary insurer for equitable subrogation after settling the underlying case against the insured. In *Fortman*, a child was permanently injured in a fall from a moving vehicle, due to a defective door lock and handle. The primary insurer of the defendant component parts manufacturer repeatedly refused offers to settle within its $300,000 policy limits. The insured settled during trial, with its excess insurer contributing $1,125,000 toward the settlement. (*Fortman*, *supra*, 221 Cal.App.3d at pp. 1396–1397.)

The excess insurer in *Fortman* assigned its claims against the primary insurer to the Fortman family. The Fortmans then sued for equitable subrogation. The primary insurer successfully moved for summary judgment: the trial court found that no cause of action could be stated for equitable subrogation because the insurers settled before an excess judgment was entered against the insured in the underlying personal injury action. (*Fortman*, *supra*, 221 Cal.App.3d at p. 1398.) Division One of this District reversed, holding that an excess judgment in the underlying tort action is not a legal prerequisite to an equitable subrogation suit. (*Id.* at pp. 1398–1399.) The court determined that the excess insurer should not suffer an actual loss without a remedy, and requiring an excess judgment in the underlying action might discourage insurers from settling claims prior to trial. (*Id.* at pp. 1401–1402.)

The reasoning in *Fortman* is flawed in several respects.

First, *Fortman* conflicts with the rule stated in *Hamilton, supra*, 27 Cal.4th 718. As discussed above, *Hamilton* invalidates an insured's assignment of a claim for breach of the duty to settle until "a judgment in excess of the policy limits has been entered against the insured." (*Id.* at p. 725.) Because the excess insurer's right to sue for equitable subrogation is no greater than the insured's right to sue for breach of the duty to settle, there can be no suit at all if the insured or the excess insurer settles before an excess judgment is entered in the underlying lawsuit against the insured.

Second, *Fortman* follows a rule applicable to equitable *contribution* cases, not the rule applicable to equitable *subrogation* cases. The court in *Fortman* based its holding on the principle that in actions between liability insurers, their " 'respective obligations flow from equitable principles designed to accomplish ultimate justice in the bearing of a specific burden.' " (*Fortman*,

*supra,* 221 Cal.App.3d at p. 1399.) This principle respecting burden sharing among insurers is the rule applicable to equitable contribution cases. (*Fireman's Fund, supra,* 65 Cal.App.4th at p. 1306.)

■  Equitable contribution allows for loss sharing among coinsurers "that share the same level of liability on the same risk as to the same insured." (*Maryland Casualty Co. v. Nationwide Mutual Ins. Co.* (2000) 81 Cal.App.4th 1082, 1089 [97 Cal.Rptr.2d 374].) "Th[e] right of equitable contribution belongs to each insurer individually. It is not based on any right of subrogation to the rights of the insured, and is not equivalent to ' "standing in the shoes" ' of the insured." (*Fireman's Fund, supra,* 65 Cal.App.4th at p. 1294.) "Unlike subrogation, the right to equitable contribution exists *independently* of the rights of the insured." (*Id.* at p. 1295.)

■  Principles underpinning the right to equitable contribution are not germane in an action based on equitable subrogation. There is generally no right to equitable contribution between primary and excess carriers. (*Reliance Nat. Indemnity Co. v. General Star Indemnity Co.* (1999) 72 Cal.App.4th 1063, 1078 [85 Cal.Rptr.2d 627]; Croskey et al., Cal. Practice Guide: Insurance Litigation (The Rutter Group 2005) ¶ 8:66.2, p. 8-25.) The reason is that primary insurers and excess insurers "do not share the same level of liability." (*St. Paul Mercury Ins. Co. v. Frontier Pacific Ins. Co.* (2003) 111 Cal.App.4th 1234, 1253 [4 Cal.Rptr.3d 416].) Between primary insurers and excess insurers, principles of equitable subrogation apply. (*Ibid.*) Thus, the *Fortman* court relies upon a concept of "burden sharing" that is not apropos in subrogation litigation between primary and excess insurers.

■  Third, *Fortman* relies on a case in which the primary insurer wrongfully *abandoned* its defense of the insured, *Continental Casualty, supra,* 219 Cal.App.3d 111. In *Continental Casualty,* the excess insurer stepped in and assumed the insured's defense in a tort case, midway through the litigation, after the primary insurer announced its intent to withdraw from its defense of the insured. The excess insurer negotiated a settlement for the insured, then sued the primary insurer for equitable subrogation, seeking "to enforce the rights of the insured." (*Id.* at p. 125.) When a primary insurer refuses to defend, its insured is entitled to make the best possible settlement, and has an assignable claim against the primary insurer for bad faith and for dereliction of its contractual duty to defend. (See fn. 1, *ante.*) In an abandonment case, a conclusive judicial determination of the underlying tort suit against the insured is not a prerequisite to the excess insurer's subrogation claim against the defaulting primary insurer. (*Continental Casualty, supra,* 219 Cal.App.3d at p. 126.) In neither *Fortman* nor this case is there any claim that the primary insurer denied a defense to or otherwise abandoned the insured.

In short, *Fortman* is not persuasive. It is based on faulty premises, namely, it applies a rule relating to equitable contribution (in an equitable subrogation case) and it applies a rule relating to a primary insurer's refusal to defend its insured (in a case where the primary insurer never abandoned the insured's defense). The Supreme Court makes clear in *Hamilton* that a judgment in excess of the policy must be entered before there can be a claim for breach of the primary insurer's duty to settle. Because *Fortman* is contrary to the holding in *Hamilton*, we cannot follow *Fortman*.

## DISPOSITION

The judgment is affirmed.

Ashmann-Gerst, J., and Chavez, J., concurred.