NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

APR 4 2017

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| In re:  ALAMEDA INVESTMENTS, LLC, | No.    14-56574 |
| Debtor, | D.C. No. 2:13-cv-01917-JGB |
| _____ | |
| ANGELO TSAKOPOULOS and BRIAN C. VAIL, | MEMORANDUM[*] |
| Appellants, | |
| v. | |
| ALAMEDA INVESTMENTS, LLC, | |
| Appellee. | |

Appeal from the United States District Court
for the Central District of California
Jesus G. Bernal, District Judge, Presiding

Argued and Submitted October 18, 2016
Pasadena, California

Before:  TALLMAN and CHRISTEN, Circuit Judges, and KENNELLY,[**] District Judge.

---

[*]       This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]       The Honorable Matthew F. Kennelly, United States District Judge for the Northern District of Illinois, sitting by designation.

Angelo Tsakopoulos and Brian C. Vail ("Appellants") appeal the district court's order affirming the bankruptcy court's order disallowing their claims. The parties are familiar with the facts of the case and we do not repeat them here except as necessary to explain our disposition.

We review a decision on appeal from a bankruptcy court de novo and apply the same standard of review applied by the district court to the underlying bankruptcy decision. *See In re AFI Holding, Inc.*, 525 F.3d 700, 702 (9th Cir. 2008). When, as here, the bankruptcy court did not consider extrinsic evidence, "the issue of [contract] interpretation is a matter of law and freely reviewable." *In re U.S. Fin. Sec. Litig.*, 729 F.2d 628, 631–32 (9th Cir. 1984).

Both the bankruptcy and district courts concluded that Appellants waived their equitable right to contribution via the plain language of the Repurchase Guaranty, which waives "rights of . . . contribution and any other rights and defenses that are or may become available to Guarantor by reason of California Civil Code Sections 2787 to 2855, inclusive" and further provides that "Guarantor shall not have, shall not directly or indirectly exercise, and hereby waives . . . any rights of contribution, indemnification, reimbursement or similar suretyship claims arising out of this Guaranty."

First, Appellants argue that only Pulte Investments, Inc. ("Pulte"), and not Alameda, may enforce the waiver provisions because the Repurchase Guaranty

2

states that it is "for the sole protection and benefit of Pulte . . . and no other Party shall be a direct or indirect beneficiary of, or shall have any direct or indirect cause of action or claim in connection with, [the Repurchase] Guaranty." We reject Appellants' blanket enforcement interpretation because it would render other enforcement provisions—for example, Paragraph 4(a)(i)'s waiver of Appellants' "right to require Pulte to marshal assets . . . or . . . to proceed against . . . any other Party"—"nugatory, inoperative or meaningless." *City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 80 Cal. Rptr. 2d 329, 349 (Ct. App. 1998) (subsequent history omitted); *see also* Cal. Civ. Code § 1641.

We also note that if Appellants' argument—that only Pulte may derive any "direct or indirect" benefit from the Repurchase Guaranty—were correct, it would bar Appellants' own bankruptcy claims. Our dissenting colleague also overlooks this wrinkle. Although the right to contribution is equitable in nature, it arises from the obligation imposed under the Repurchase Guaranty. *See Machado v. Fernandez*, 16 P. 19, 20 (Cal. Ct. App. 1887) ("[P]ayment, to be the foundation of a claim for contribution, must be compulsory . . . [based on a] fixed and positive obligation[.]"). Thus, if the "sole benefit" provision prevents Alameda from enforcing the waiver provisions, then it also prevents Appellants from acquiring the right to contribution (even in absence of the waiver provisions) because that right is a benefit arising from the Repurchase Guaranty.

3

Second, Appellants argue that the waivers became inoperable when the Repurchase Guaranty was fully satisfied. Appellants are correct that the Repurchase Guaranty was fully satisfied and its specific provisions were extinguished via the settlement agreement. *See Ebensteiner Co. v. Chadmar Grp.*, 49 Cal. Rptr. 3d 825, 829 (Ct. App. 2006) ("[S]ettlement operates as a merger and ban as to all pre-existing claims and those alleged in the lawsuit that have been resolved.") (citing *Armstrong v. Sacramento Valley Realty Co.*, 178 P. 516, 517 (Cal. 1919)). However, this does not change the waivers' original effect. The equitable right to contribution only comes into existence after a co-obligor makes payment on a shared obligation. *Morgan Creek Residential v. Kemp*, 63 Cal. Rptr. 3d 232, 238 (Ct. App. 2007). Once a co-obligor pays for "more than his share, the one paying possesses a *new obligation* against the others for their proportion of what he has paid for them." *Id.* (emphasis added). Thus, a party waiving the right to contribution necessarily does so prospectively, as Appellants did here. It does not matter that the waivers were later extinguished.

Finally, Appellants argue that, although they waived the right to contribution described in section 2848 of the California Civil Code, they did not waive the right to contribution described in section 1432. Although Appellants waived the argument by failing to specifically discuss any distinction between sections 1432 and 2848 before the bankruptcy and district courts, *see Whittaker Corp. v.*

4

*Execuair Corp.*, 953 F.2d 510, 515 (9th Cir. 1992), we reject this argument on the merits.  Section 1432 falls under Division 3, Part 1, of the California Civil Code, entitled "Obligations in General," while section 2848 falls under Part 4, entitled "Obligations Arising from Particular Transactions."  We therefore conclude that, in the co-guarantor context, these two sections describe the same equitable right to contribution.  *See Gonzales v. Superior Court*, 44 P.2d 320, 321 (Cal. 1935) ("[C]hapter and section headings in the [California] Codes are entitled to considerable weight in interpreting the various sections[.]"); *see also Jans v. Nelson*, 100 Cal. Rptr. 2d 106, 111 (Ct. App. 2000) (citing both sections without distinction); *Morgan Creek Residential*, 63 Cal. Rptr. 3d at 238 (same).  Thus, Appellants' waiver of "the right to contribution" was effective under both sections.

Finally, we disagree with our colleague's conclusion that there is a "gaping hole" in Alameda's theory because Pulte receives no benefit from Appellants' loss of their contribution rights once the principal has been repaid in full.  Dissent 5.  Although Appellants may have waived more rights than necessary to induce Pulte to continue with the sale, they did in fact waive those rights.  The dissent's interpretation rests, not on ambiguity, but on the conclusion that the parties did not mean what they wrote.  Appellants could have included a provision explaining that the waiver was only temporary and that contribution rights would spring back to

5

life as between the co-guarantors once Pulte was paid—but they did not do so. This oversight is fatal to their arguments.

Each party shall bear its own costs.

**AFFIRMED.**

*Alameda Investments, LLC: Tsakopoulos v Alameda     14-56574*

CHRISTEN, dissenting.

I would reverse the judgment of the bankruptcy court.

Reviewing de novo, I conclude that the terms of the Repurchase Guaranty can only be reconciled if the waiver of the right to contribution was confined to the co-guarantors' obligation to satisfy Pulte.  The Repurchase Guaranty is express in stating that it was only intended to benefit Pulte, the obligations imposed by the Guaranty expired as soon as Pulte was paid, the circumstances under which the Guaranty was executed are entirely consistent with that limited purpose, and Alameda conspicuously offers no alternative explanation why Tsakopoulos and Vail would have otherwise agreed to shoulder Alameda's share of the $5 million burden without receiving any consideration for doing so.  For these reasons, I respectfully dissent.

First, we must enforce the parties' agreement according to their intent.  "The fundamental rules of contract interpretation are based on the premise that the interpretation of a contract must give effect to the 'mutual intention' of the parties." *ASP Props. Grp. v. Fard, Inc.*, 35 Cal. Rptr. 3d 343, 351 (Cal. Ct. App. 2005) (citation omitted).  As the majority acknowledges, the Guaranty expressly states that it was only intended to benefit Pulte.  The Guaranty was "for the sole

1

protection and benefit of Pulte . . . and no other Party shall be a direct or indirect beneficiary of, or shall have any direct or indirect cause of action or claim in connection with [the Repurchase] Guaranty." Neither the parties nor the majority suggest that this language is ambiguous and neither advance a persuasive argument why Alameda should be able to construe the Guaranty to its benefit, and to its co-guarantors' detriment. The Guaranty is also express in providing that, once Pulte was satisfied, the parties were excused from any further performance: "All covenants, agreements, representations and warranties made in this Guaranty survive the execution and delivery of this Guaranty, and shall continue in full force and effect *so long as any Repurchase Obligation is unsatisfied*," (emphasis added). The parties do not dispute that Vail and Tsakopoulos fully satisfied Pulte without Alameda's help. In keeping with the parties' plain objective, the Guaranty reiterates that the waiver of the right to contribution remained in effect only "so long as any Repurchase Obligation remain[s] unsatisfied," and further specified in Paragraph 4(a)(I) that each guarantor waived the "right to require Pulte to marshal assets . . . or to proceed against . . . any other Party."

Second, the circumstances in which the Guaranty was executed support the contract interpretation offered by Tsakopoulos and Vail, not the one offered by Alameda. The Guaranty was executed when Tsakopoulos, Vail, and Alameda held

2

title to a 208-acre parcel of real estate they hoped to sell to Pulte.  Pulte learned that certain permits were needed in order to develop the property, and he notified the sellers that he was not willing to go through with the deal.  It was in an effort to salvage the sale that the three co-guarantors agreed to individually obligate themselves to repurchase the parcel from Pulte if, within a year, it was not possible to secure the necessary permits.  The co-guarantors bound themselves to be jointly and severally liable for the repurchase obligation.  The consideration for the Guaranty was Pulte's agreement to close on the sale.  Unremarkably, the express purpose of the Guaranty was to insure that Pulte was paid: the Guaranty said as much, the co-guarantors explicitly waived any ability to insist that Pulte proceed against them in any particular order, and they waived the right to seek contribution among themselves until Pulte was fully satisfied (they also agreed to pay his fees and costs).  It is important to recognize the uncontested context in which the Guaranty was executed.  It was Pulte who extracted the promise to repurchase the property and it is clear that he had every reason—and the leverage—to insist that if it became necessary to invoke the Repurchase Guaranty, the co-guarantors would have no right of contribution between each other unless and until he was fully paid.  The language and circumstances of the Repayment Guaranty make the parties' intent clear:  Pulte would be paid if the repurchase obligation was triggered, and

3

the inevitable problem of settling up the guarantors' statutorily-guaranteed right to contribution was left to the guarantors to sort out.

I agree with the majority that the waiver of the right to contribution was prospective, but this is entirely consistent with the language specifying that the Guaranty was to operate for Pulte's sole benefit. With 20-20 hindsight, we know that two of the co-guarantors fully satisfied Pulte. But if it had come to pass that Pulte had been only partially satisfied, the prospective waiver of the right to contribution would have protected him against the possibility that a guarantor who contributed more than his fair share would have been able to seek contribution from the others. Even the majority acknowledges that the obligation to settle up would have arisen whether Pulte had been fully satisfied or not because once a co-obligor pays for "more than his share, the one paying possesses a new obligation against the others for their proportion of what he has paid for them." *Morgan Creek Residential v. Kemp*, 63 Cal. Rptr. 3d 232, 238 (Cal. Ct. App. 2007) (citation omitted). Reading the Guaranty's waiver to account for the possibility that one or two guarantors could have been owed contribution before Pulte was fully satisfied harmonizes the terms of the instrument.

The majority counters that if only Pulte were allowed to benefit from the Repurchase Guaranty, Appellants' own bankruptcy claims would be barred.

4

Respectfully, the majority has this backwards. Pulte's status as the sole beneficiary of the Repurchase Guaranty is precisely why Vail and Tsakopoulos *do* have claims to assert in bankruptcy. The majority's mistaken premise is its view that the right to contribution arose from the Repurchase Guaranty. In fact, only the co-guarantors' *joint obligation to repay Pulte* arose from the Repurchase Guaranty; the right to contribution—the claims Vail and Tsakopoulos asserted in bankruptcy—arose when Vail and Tsakopoulos paid more than their fair share to satisfy the joint debt owed to Pulte. The majority recognized that the right to contribution is guaranteed by California law, and correctly cited *Morgan Creek*, 63 Cal. Rptr. at 238 ("The equitable right to contribution only comes into existence after a co-obligor makes payment on a shared obligation"), but the majority failed to apply this rule.

Alameda offers no response to the elephant in the room: while all three guarantors had ample reason to individually accept the obligation to make Pulte whole—unless they did so, he would not have purchased the property—they had zero reason to agree to waive the right of contribution guaranteed by statute and by the common law which protected each of them if, as happened here, one or two wound up footing the entire bill. In my view, this gaping hole in Alameda's theory is telling. The majority's only response is the observation that Appellants "may

have waived more rights than necessary to induce Pulte to continue with the sale."

But this misses the real point: there is no reason to think that Pulte would have been induced by a waiver of the right to contribution between the co-guarantors. The way the co-guarantors allocated the ultimate burden, among themselves, made no difference to Pulte. As reflected in the contract's express provisions that: (1) the Guaranty was for Pulte's sole protection and benefit; (2) the co-guarantors waived any ability to insist that Pulte proceed against them in any particular order; and (3) the warranties in the Repurchase Guaranty were to continue in effect only so long as any Repurchase Obligation remained unsatisfied, Pulte had no interest in how the co-guarantors settled up between themselves after he was paid. It is the court's obligation to interpret the Repurchase Guaranty contract, *see U.S. Leasing Corp. v. duPont*, 444 P.2d 65, 71 (Cal. 1968) ("[I]t is solely a judicial function to interpret a written instrument unless the interpretation turns upon the credibility of extrinsic evidence.") (citation omitted), and the theory that Vail and Tsakopoulos would have released Alameda from the co-obligation, for no consideration, is not explained by the majority.

I agree that the parties' discussion of third party beneficiary status is not on point. As a party to the contract, Alameda was not required to show that it was an intended third party beneficiary. But being a party to the Guaranty is not the same

6

thing as being a promisee. "[T]he intended beneficiary bears the burden of proving that the promise he seeks to enforce was actually made to him personally or to a class of which he is a member." *Spinks v. Equity Residential Briarwood Apartments*, 90 Cal. Rptr. 3d 453, 470 (Cal. Ct. App. 2009) (internal quotation marks and citation omitted). The co-guarantors obligated themselves to joint and several liability when and if it became necessary to repurchase property, but the Guaranty extended no farther than that.

Because Alameda offers no coherent interpretation of the Repurchase Guaranty from which I can glean an agreement by Tsakopoulos and Vail to release their co-guarantor from the right to seek contribution, I respectfully dissent.

7