[Civ. No. 5319. Fourth Dist. May 28, 1956.]

MANUEL L. ROCHA, Respondent, v. MARY ROCHA, Appellant.

Lewis, Field & DeGoff for Appellant.

Rush, Soares & Stringham for Respondent.

GRIFFIN, J.—Action by plaintiff and respondent to recover from defendant and appellant, his ex-wife, one-half of the federal income tax for the years 1949 and 1950, claimed due by the terms of a property settlement agreement. The parties accumulated considerable community property since their marriage in 1930, consisting of a leasehold interest in a ranch, money, etc. On October 17, 1952, they entered into a written property settlement agreement whereby the wife received considerable cash and other property and the hus-

band received the leasehold interest in the ranch, etc. They there agreed:

"*SEVENTH*: That all *indebtedness and liabilities* heretofore incurred or created by the parties hereto, to and including the 30th day of June, 1952, have been paid in full; that any and all indebtedness and liabilities incurred or created solely by the party of the first part subsequent to said 30th day of June, 1952, shall be wholly paid by the party of the first part and that the party of the second part shall not pay or be liable to pay any part thereof, and the party of the first part hereby agrees to keep the party of the second part safe and harmless from the payment of any part of the indebtedness and liabilities mentioned in this particular paragraph.

"*EIGHTH*: That any and all indebtedness and liabilities incurred or created solely by the party of the second part subsequent to said 30th day of June, 1952, shall be wholly paid by the party of the second part and that the party of the first part shall not pay or be liable to pay any part thereof, and the party of the second part hereby agrees to keep the party of the first part safe and harmless from the payment of any part of the indebtedness and liabilities mentioned in this particular paragraph. . . .

"THIRTEENTH: That the parties hereto will execute all necessary joint or separate State of California and Federal income tax returns, or amendments thereto, concerning the business affairs of the parties hereto from the time of their marriage to and including the 30th day of June, 1952; and that the party of the first part agrees to assume and to pay one-half of all State of California and Federal income taxes owing by either or both of the parties hereto for the period ending December 31, 1951, and that said party of the first part agrees to assume and to pay all State of California and Federal income taxes owing by either or both of the parties hereto for the period beginning January 1, 1952, and ending on June 30, 1952; and the party of the second part does hereby agree to assume and to pay one-half of all State of California and Federal income taxes owing by either or both of the parties hereto for the period ending December 31, 1951; and each of the parties hereto hereby agrees to keep the other party hereto safe and harmless from the payment of any of the income taxes agreed to be paid by him, or by her, as aforesaid." (Italics ours.)

In the month of December, 1952, the Internal Revenue Department decided to investigate the joint federal income tax returns of the parties for the years 1949 and 1950, and the parties had knowledge of this fact at the time of the separation agreement.

On March 22, 1954, plaintiff paid the entire amount of $5,175.28 found due. Relying on the separation agreement, plaintiff demanded of defendant the one-half paid by him on her behalf. She refused to pay him contending that plaintiff, by the terms of the agreement, had represented to her that "all *indebtedness and liabilities*" of the parties up to June 30, 1952, had been paid and accordingly plaintiff was estopped from asserting the claim. She also argues that there was no sufficient showing that that sum was due and owing to the government and that the payment of the entire amount by plaintiff was a voluntary payment and accordingly defendant was not liable for such payment, citing such authorities as *Machado* v. *Fernandez,* 74 Cal. 362, 363 [16 P. 19] ; *Vidal* v. *Stahmann Farms,* 93 F.2d 902, 903; and *United States* v. *Globe Indem. Co.,* 94 F.2d 576.

The written agreement was drawn by plaintiff's then counsel, who testified at the trial that Section Thirteen thereof was placed in the agreement after consultation of plaintiff and defendant and their respective attorneys; that they all realized the possibility of an audit of these returns for the years indicated and that there might be a possibility of an income tax deficiency; that it was so drawn that plaintiff would be protected so as to entitle him to a contribution from defendant in case one was assessed, and that was the reason for including that provision in the separation agreement.

The phrase "*indebtedness* and *liability*" incurred or created by the parties mentioned in Paragraph Seven might have covered such income tax assessment under ordinary conditions. It does appear to us that, when the other sections in relation to the probable additional tax for the years 1949 and 1950 were considered in connection with that paragraph, the trial court was fully justified in finding against defendant's contention. We see no merit to the claimed estoppel. (Civ. Code, §§ 1636-1641 and 1652; 18 Cal.Jur.2d p. 406, § 5; *McClain* v. *Bercut-Richards Packing Co.,* 64 Cal.App.2d 420, 425 [148 P.2d 907] ; *Cruise* v. *City & County of San Francisco,* 101 Cal.App.2d 558, 562 [225 P.2d 988].)

The Internal Revenue Bureau's agent was in consultation

with plaintiff about the added assessment. He estimated the deficiency at $5,175.28 for both parties on March 12, 1953, and again on March 11, 1954, and they signed a consent fixing the period of limitation on the assessment of income and profit tax.

Plaintiff testified he went to the local agent and he "figured up how much tax we owed"; that he was about to go to South America, and he was told that before leaving the bureau required that he pay the tax, so he paid it, obtained a receipt from the agent for that amount and later demanded one-half of that sum from defendant.

It was the positive duty of both plaintiff and defendant to satisfy their obligation to the government when that amount was established. Plaintiff paid it, under the conditions indicated, and according to law and the contract here involved, he was entitled to reimbursement from defendant for one-half of the amount paid. (Civ. Code, § 1432; *Jackson* v. *Lacy,* 37 Cal.App.2d 551, 559 [100 P.2d 313].) Defendant argues there was no sufficient showing that the government had actually fixed the amount claimed due. It is true, as contended by defendant, the mere issuance of a receipt for the tax is not conclusive evidence that the tax was actually due. (*United States* v. *Globe Indem. Co., supra,* 94 F.2d 576.) There was a preliminary statement (marked for identification) of that tax liability issued by the agent. This evidence and the testimony of plaintiff rather indicates that the amount due actually was fixed and payment was to be made accordingly. To supplement this evidence, plaintiff now moves this court to consider additional evidence obtained on that subject. It consists of a certified copy of a waiver of restrictions on assessment and acceptance of overassessment dated April 5, 1954, which sets forth the amount of the tax on the deficiencies and the overassessment. It is signed by the parties to this action.

Since it is our conclusion that there was otherwise sufficient evidence to establish the fact that the tax had actually been imposed, the receipt of the additional evidence would be only cumulative. Accordingly the motion should be denied. No additional claims were raised on the motion for new trial. It was properly denied.

Motion to receive additional evidence denied. Judgment affirmed.

Barnard, P. J., and Mussell, J., concurred.