Filed 6/9/25  Marriage of Kouprina and Kouprine CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| In re the Marriage of IOULIA KOUPRINA and ALEXANDRE KOUPRINE. | |
| | D084930 |
| ALEXANDRE KOUPRINE, | |
| Appellant, | (Super. Ct. No. D532901) |
| v. | |
| IOULIA KOUPRINA, | |
| Respondent. | |

APPEAL from an order of the Superior Court of San Diego County, Rebecca Church, Judge.  Affirmed.

Alexandre Kouprine, in pro. per., for Appellant.

No appearance for Respondent.

In this family court proceeding, Alexandre Kouprine (Husband) appeals from an order that his ex-wife Ioulia Kouprina (Wife) pay interest to him in the amount of $2,928.98 on the remaining amount of $8,505 in credit card debt that was assigned to her in the parties' 2013 judgment of dissolution but

that Husband has paid to the credit card companies. Husband contends that the accrued interest should have been calculated starting as of the 2013 judgment of dissolution instead of on February 1, 2021, and that, accordingly, the amount of accrued interest ordered by the family court should have been in excess of $8,000.

We conclude that the family court properly awarded interest to Husband on the amount of $8,505, beginning on February 1, 2021, at the rate of 10 percent per annum. We accordingly affirm the family court's order.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

A judgment dissolving the marriage of Husband and Wife was entered on April 8, 2013. Among other things, the judgment provided that "[e]ach party is equally responsible for one half of the credit card debt in the amount of $23,811.29," which amounted to $11,905.65 each. Husband was ordered to pay spousal support but was allowed to deduct $200 from the spousal support payment each month and apply it toward the amount Wife owed for the credit card debt. Based on this arrangement, we can assume Husband was the party responsible for the task of making the payments to the credit card companies, although the judgment of dissolution does not make that arrangement explicit.

Husband paid spousal support from April 2013 until August 2014, at which point spousal support was reduced to zero because of changed circumstances. During that period, Wife paid $3,400 toward her half of the assigned credit card debt through the monthly deduction of $200 from the spousal support payments. That left Wife, as of September 2014, with a remaining balance of $8,505 on her half of the assigned community credit card debt.

2

In January 2015, Husband sought an order requiring Wife to make a monthly payment toward her credit card debt, as she was no longer contributing through the spousal support deduction. In February 2015, the family court suspended the order that Wife pay $200 per month toward her assigned credit card debt. The family court explained that it was "not going to order [Wife] to pay toward the community debt when [Husband] is paying minimal child support as this is not in the best interest of the children."

In 2020, Husband renewed his attempt to obtain an order requiring Wife to make payments to him toward her credit card debt. By that time, the children had reached majority, and child support was no longer an issue.

In his reply memorandum, Husband detailed for the first time that he was also asking the family court to order Wife to pay interest on her balance of $8,505 for the credit card debt. Husband explained that he had been making the monthly minimum payments on the credit cards. According to Husband, however, balances remained outstanding on the credit cards because he did not have the money to pay them off completely, and finance charges were still accumulating. According to Husband, the credit cards had a "typical interest rate of 14% (up to 24% during some times)." Husband took the position that the family court should order Wife to pay interest to him, calculated from the date Wife ceased making the $200 payments toward the credit card debt on September 1, 2014. Husband proposed using the "average IRS late payment interest rate of 4% per year" to calculate the interest Wife should pay to him.

At a hearing on December 16, 2020, the family court explained that "[Husband] is the one paying the debts. [Wife] is not directly paying any of the debts. And . . . therefore, it's appropriate for [Wife] to reimburse [Husband]." The family court specifically issued an order stating that "[Wife]

owes $8505 for her share of the credit card debt. [Wife] is ordered [to] pay at the rate of $200 per month. Upon [Husband] providing documentary evidence to [Wife] that he has paid at least the $8505 principal or interest, then her obligation to pay will start the first of the following month, but no earlier than February 1, 2021. If he wishes interest[,] he is to file a [request for order] . . . and us[e] a computer program to calculate the interest."

At the hearing, the family court made additional comments regarding Husband's request for an award of interest. The family court noted, "[Husband] in his latest filing set forth some interest calculations. Those weren't in the request for order. And so I would be inclined to say, [Husband], if you wish interest, I want you to file another [request for order] in which you would use the Executioner program or some other similar program to have interest calculated with one of those programs if you intend . . . to pursue the interest."

On January 19, 2021, to comply with the family court's order and trigger Wife's obligation to begin making $200 payments to him, Husband filed a notice of proof showing that he had paid at least $8,505 on the community credit card accounts.

At an April 16, 2021 hearing, Wife suggested that the family court issue an order assigning her portion of the credit card debt to her name so that she could pay it off directly. The family court did not rule on that request.[1]

---

[1] The appellate record does not include Wife's request for order at issue during the April 16, 2021 hearing, and therefore it is not clear whether Wife's request to transfer her share of the credit card debt to her name was included in that request.

On August 22, 2023, Husband filed a request for an order, in which he explained that Wife had not paid any amount in response to the December 2020 order. A hearing was noticed for November 17, 2023. In his request for order, Husband asked that the family court order Wife to comply with her obligation to pay him $200 per month and that the family court impose sanctions for Wife's failure to do so. Husband also explained that, after a delay, he had obtained access to the Executioner computer program to calculate the interest owing from Wife in the manner directed by the family court in December 2020. Based on calculations made through the Executioner program, Husband requested that the family court order Wife to pay interest, starting from September 2014, in an amount over $7,000. Finally, Husband endorsed the request, previously made by Wife at the April 16, 2021 hearing "to transfer to [Wife] her share of the Family Credit Card Debt and make her responsible to pay it off." Specifically, he asked the family court to order Wife to provide information regarding her financial institutions for "the sole purpose of transferring [Wife's] share from [Husband's] credit cards to her account(s)."

In a declaration, Husband stated he had been "paying off community [d]ebt as quickly as he was only able to, in the amounts exceeding minimum monthly payments, with the goal to keep his credit ratings in good standing." Husband also stated, "Credit Cards containing Family Community Debt charged rather high interest. [Husband] took every opportunity to consolidate said Debt for lower interest rates. Still average interest rates over all those years were about 14-20%."

On March 22, 2024, Husband refiled the same request for order with a renoticed hearing date.[2] Due to the passage of time, he also updated the amount of the interest calculation to over $8,000.

On July 12, 2024, the family court held a hearing on Husband's request for order. The hearing was not reported. In relevant part, the family court ordered as follows: "The court notes it is husband's request to move the wife's portion of community debt to her name but the court declines to order that, but the parties may meet and confer on that issue. Regarding payment itself of that community debt, the court notes [Code of Civil Procedure, section] 685.020 does provide that interest commences to accrue on a money judgment on the date of entry of the Judgment. The court notes the Judgment itself is not specific enough to trigger accruing of their payment. The court takes [Husband's] request as confirming the court order from the 12/16/202[0] findings and order after hearing which was clear and specific that payments were to begin 02/01/2021. The court finds the interest amounts to a total of $2,928.98. . . . Repayments are to continue 08/01/2024 from wife to husband at a rate of $200 [per month] and are to continue until the amount of principal and interest is paid off in full, and it is accruing interest now at 10% per annum."

Husband appeals from the family court's July 12, 2024 order. He contends the family court should have awarded him more than $2,928.98 in interest. Wife has not appeared in this appeal.

---

2 From the appellate record, it is not clear what happened at the hearing originally scheduled for November 17, 2023. In light of Husband's refiling of his request for order, the request was apparently not ruled upon at that time.

## DISCUSSION

Husband's sole contention on appeal is that the family court erred in using the starting date of February 1, 2021, to calculate the amount of interest Wife should pay to Husband. Husband relies on Code of Civil Procedure section 685.020 to argue that interest started to accrue as of the April 8, 2013 judgment of dissolution. Husband states that he is, however, willing to forego interest during the period when Wife was making $200 monthly payments toward her debt (through deductions from his spousal support payments) from April 2013 until August 2014. As a result, Husband seeks an order awarding him interest starting in September 2014.

To evaluate Husband's contention, we must first examine the implicit legal framework underlying the family court's order that, effective February 1, 2021, Wife owed $8,505 to Husband as reimbursement for his payment of her assigned portion of the community credit card debt. As we will explain, the family court's order requiring Wife to reimburse husband in the amount of $8,505 was based on the principle of equitable contribution.

Under the principle of equitable contribution, " '[i]n situations where two or more parties are jointly liable on an obligation and one of them makes payment of more than his share, the one paying possesses a new obligation against the others for their proportion of what he has paid for them.' " (*Morgan Creek Residential v. Kemp* (2007) 153 Cal.App.4th 675, 684.) This principle is codified in Civil Code section 1432, which provides, with certain exceptions that are not applicable here, "a party to a joint, or joint and several obligation, who satisfies more than his share of the claim against all, may require a proportionate contribution from all the parties joined with him." (Civ. Code, § 1432.) "The right given by this section of the code to a

joint obligor is based on the principle of equity that when he has paid money which in equity and good conscience should be paid by another, he should be reimbursed therefor." (*Jackson v. Lacy* (1940) 37 Cal.App.2d 551, 559.) "It is elementary that a party acquires a right of contribution as soon as he pays more than his share but not until then." (*Ibid.*)

Here, Husband and Wife incurred the community credit card debt as joint obligors, who were jointly responsible for payment of the debt to the credit card companies. The 2013 judgment of dissolution established that Husband was to pay half of the community credit card debt, and Wife was to pay the other half. When Husband proved, as of February 1, 2021, that he had paid more than his share of the joint obligation to the credit card companies, he became the beneficiary of a court order recognizing that he had a right to equitable contribution against Wife for the amount of $8,505 that he had paid on Wife's behalf. (See *Rocha v. Rocha* (1956) 141 Cal.App.2d 912, 915 [applying principles of equitable contribution arising under Civ. Code, § 1432 when, after dissolution, an ex-husband spouse paid his ex-wife's share of their joint income tax liability].) Before that date, Husband did not have an order establishing that Wife owed him $8,505.

Next, having established that Husband obtained an order, as of February 1, 2021, giving him a right to obtain equitable contribution from Wife in the amount of $8,505, we examine whether the family court erred in using February 1, 2021, as the starting date for calculating the interest owed by Wife to Husband on her $8,505 obligation to him. As the family court recognized in its July 2024 order, an award of interest in this context is governed by Code of Civil Procedure section 685.020. Under that provision, with certain exceptions, "interest commences to accrue on a money judgment on the date of entry of the judgment." (Code Civ. Proc. § 685.020, subd. (a).)

8

Generally, "interest accrues at the rate of 10 percent per annum on the principal amount of a money judgment remaining unsatisfied." (Code Civ. Proc., § 685.010, subd. (a).) " 'Money judgment' means that part of a judgment that requires the payment of money." (Code Civ. Proc. § 680.270.)

Although the family court issued an *order*, not a *judgment*, establishing that, as of February 1, 2021, Wife owed $8,505 to Husband, the post-judgment interest provision of Code of Civil Procedure section 685.020 is nevertheless triggered by the family court's order. In the context of Code of Civil Procedure section 685.020, the term " '[j]udgment' means a judgment, *order*, or decree entered in a court of this state." (Code Civ. Proc., § 680.230, italics added; see also *Gilman v. Dalby* (2021) 61 Cal.App.5th 923, 932 [" ' "Whenever an order for the payment of a sum of money is made by a court pursuant to the provisions of this code, it may be enforced by execution in the same manner as if it were a judgment." ' "].)

As of February 1, 2021, Husband obtained an order requiring Wife to pay him $8,505. Accordingly, as of that date, but not before then, interest started to accrue on Wife's obligation to Husband. The family court therefore properly ruled that post-judgment interest in the amount of 10 percent per annum would start to accrue on the amount of $8,505 as of February 1, 2021, as that is the date when Husband obtained an order entitling him to equitable contribution from Wife.

As a final matter, having reviewed the record, we note that the family court's judgment assigning Wife half the community credit card debt, but then suspending for several years Wife's payments to Husband for her half of the community debt, has given rise to a confusing and unusual situation. The instant opinion identifies the principle of equitable contribution as the

9

governing rule in this circumstance, and we note that the principle may have some application in this matter going forward.

The record establishes that the credit card companies have imposed finance charges on the unpaid amounts that remained on the credit cards. The family court's judgment of dissolution stated that Wife was "responsible" for half of the community credit card debt. We construe that judgment to implicitly encompass Wife's responsibility for all of the contractual obligations arising from her half of the assigned community debt, including any future finance charges imposed by the credit card companies due to any portion of Wife's assigned community credit card debt that continued to be carried on the credit cards. In other words, the judgment making Wife "responsible" for her half of the community credit card debt was a judgment assigning Wife the responsibility for $11,905.65 of the community credit card debt *plus* any future finance charges imposed by the credit card companies on the portion of Wife's assigned community credit card debt that remained unpaid.

Based on the principle of equitable contribution, and assuming an adequate future factual showing that Husband has paid finance charges on behalf of Wife, the family court would have legal authority to issue an order reimbursing Husband for any payment he has made to the credit card companies, on Wife's behalf, for the finance charges imposed on her share of the community credit card debt, over and above the $8,505 he has already paid.

10

## DISPOSITION

The family court's order awarding interest to Husband on the amount of $8,505, beginning as of February 1, 2021, is affirmed.


IRION, J.

WE CONCUR:


McCONNELL, P. J.


RUBIN, J.